UNITED STATES of America,
Plaintiff-Appellee,

v.

Roy Lee SHOEMAKER,
Defendant-Appellant.

No. 75–1946.

United States Court of Appeals,
Tenth Circuit.

Oct. 12, 1976.
Certiorari Denied Dec. 6, 1976.
See 97 S.Ct. 537.

Bruce Green, Muskogee, Okl., for defendant-appellant.

Richard A. Pyle, U. S. Atty., Muskogee, Okl., for plaintiff-appellee.

Before HILL, SETH and McWILLIAMS, Circuit Judges.

HILL, Circuit Judge.

Roy Lee Shoemaker appeals a jury conviction in the United States District Court for the Eastern District of Oklahoma for a violation of 18 U.S.C. § 1111, murder while attempting rape, in connection with the death of Marina Rose Howeth. The government's evidence in the case included Shoemaker's written confession, and a series of color photographs depicting the partially nude body of the victim. Shoemaker alleges as error the admission into evidence of those two classes of exhibits: (1) the confession, for want of voluntariness, and (2) the pictures, for lack of sufficient probative value to offset the possible prejudicial and inflammatory effect upon the jury. We affirm the conviction.

The body of Marina Rose Howeth was found by a minister, Terry Dale Johnson, at approximately 5:45 p. m. on Monday, June 2, 1975, some 50 feet off a footpath where Johnson was hiking with a group of young men in the Platt National Park near Sulphur, Oklahoma. Shortly before making the discovery of the body, the minister and his companions saw a young man, whom they were later able to positively identify as appellant here, riding a bicycle in haste in the direction opposite theirs on the path. A search of the Sulphur area, based upon the description given by the witnesses, led agents of the Federal Bureau of Investigation to the appellant. They contacted him at his place of employment at a carnival in Sulphur at about 3:00 p. m. on Tuesday, June 3. Appellant was advised of his "Miranda rights," and he executed a written waiver thereof. He accompanied officers to the Sulphur police headquarters for questioning, and remained with them until about 9:35 that evening, at which time he was released to go about his business. During the interview, he discussed the murder of Miss Howeth with officers, and expressed a desire to help them solve it.

Agents for the government apparently maintained some communication with appellant after the questioning session on Tuesday evening, but did not again interview him in person until about 5:30 p. m., Friday, June 6. At that time agents came for him at the carnival. He was again apprised of his rights, and acknowledged and waived them in writing. He was taken to the park headquarters by FBI agents. He walked with them along the path where Howeth met her demise, and helped them identify objects along the path. He walked to the thickly wooded area off the path where the body was found. These events transpired between 5:30 and 7:54 that evening. At 7:54 p. m., appellant was invited to join the agents for dinner. They treated him to dinner, during which time the crime was not discussed. At 9:30 p. m., the party returned to park headquarters. Questioning resumed at about 10:00 p. m., when Sheriff Bill Branch sought to give appellant a lie detector test. Branch orally advised appellant of his right, *inter alia*, to remain silent. Appellant refused to take a lie de-

tector test, but in the course of questioning by Branch admitted that he may have killed Howeth. At about midnight on Friday, FBI agents resumed questioning. They again advised appellant of his rights. He was shown pictures of the victim's body, and shortly thereafter gave an oral confession. He became emotional, the interview terminated, and he was taken the 32 miles to the nearest federally approved jail at Ardmore, Oklahoma. Up until the time he gave his oral confession, he was never restrained physically nor told that he was under arrest or otherwise not free to leave. Moreover, the evidence tended to show that questioning sessions were conducted in a spirit of cooperation, and singularly lacked acts of oppression or coercion on the part of federal agents.

At about noon on Saturday, June 7, agents came for Shoemaker at the Ardmore jail and transported him to Sulphur. They again advised him of his rights and he executed another written acknowledgement and waiver thereof. Shoemaker dictated a confession, which officers transcribed and appellant signed at 1:48 p. m. on that day. At 3:10 p. m., appellant was brought before a magistrate.

■ Appellant first contends that the trial judge erred in admitting his confession into evidence. His primary argument is that his confession was rendered involuntary in that he was not brought before a magistrate, as provided in F.R.Crim.P. 5(a), within a reasonable time, specified to be six hours after arrest in *McNabb v. United States*, 318 U.S. 332, 63 S.Ct. 608, 87 L.Ed. 819 (1943), and *Mallory v. United States*, 354 U.S. 449, 77 S.Ct. 1356, 1 L.Ed.2d 1479 (1957). The effect of failure to strictly comply with Rule 5(a) upon the admissibility of confessions is elucidated by the statutory enactment of 18 U.S.C. § 3501. It is there provided that non-compliance with the six hour rule does not *ipso facto* render a confession inadmissible. 18 U.S.C. § 3501(c); *United States v. Crocker*, 510 F.2d 1129 (10th Cir. 1975); *United States v. Davis*, 456 F.2d 1192 (10th Cir. 1972). Voluntariness is the sole test for admissibility of a confession. *United States v. Davis, supra*; 18 U.S.C. § 3501(a). When a trial judge considers a confession made after arrest and before arraignment, a factor for him to consider in arriving at a threshold determination of admissibility is ". . . the time elapsing between arrest and arraignment of the defendant making the confession. . . ." 18 U.S.C. § 3501(b). Such a consideration is only a factor, and need not be conclusive. *United States v. Crocker, supra; United States v. Davis, supra*. Certainly delays at the behest of the defendant may not be asserted by him to render his confession inadmissible.

■ The trial judge in the present case addressed the question of the admissibility of appellant's confession, considering the various factors which weigh upon its voluntariness. His decision to admit the confession was well within the bounds set by statute and decision in this circuit. *United States v. Crocker, supra*. The trial judge found that arrest took place at the conclusion of the questioning session, Friday, June 6, in which appellant orally confessed. We agree. Appellant's argument is speculative at best that his presence with officers earlier constituted arrest in that, if he had attempted to leave, "some decision would have had to have been made." The written confession was taken at approximately 1:48 p. m., Saturday, June 7, or about 13 hours after arrest. There is evidence that a substantial portion of the delay on Saturday was on request of the appellant. He refused to go before the magistrate until he had seen members of his family. Agents were still trying to locate them when appellant was taken before the magistrate. Given the additional circumstances, including the weekend day involved, the time of day of the arrest, the distance traveled, and the numerous occasions upon which appellant was advised of his rights, we perceive no error in the finding of the trial judge that the 13 hours delay in presentment did not vitiate the voluntariness, and hence the admissibility, of the confession here considered.

Appellant cites statements within the proffered confession which he says are not true. Any question raised thereby is one of credibility only, and is not pertinent to a determination of threshold admissibility. 18 U.S.C. § 3501(a).

Appellant's second contention of error, the admission of photographs into evidence, is likewise without merit. The determination of admissibility of evidence such as the photographs here in question is a function committed to the discretion of the trial judge. *United States v. Harris*, 534 F.2d 207 (10th Cir. 1975). In the present case, the trial judge heard arguments out of the presence of the jury regarding the admissibility of the photos, in terms of their probative value *vis a vis* their possible prejudicial or inflammatory effect upon the jury, and determined to admit them. Here, as at trial, appellee cites the substantial probative value of the pictures, particularly in establishing the essential element of attempted rape and in substantiating the testimony of Dr. Chapman, witness for the government, as to cause of death. We cannot say that discretion was abused in admission of the photographs. *United States v. Delay*, 500 F.2d 1360 (8th Cir. 1974).

AFFIRMED.